UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MARLIN RIGGS, individually, and JOSE PIÑA, JOE ROCHA, ANDREW IBARRA, JOSHUA KELLY, RAY BARRIOS, and RANDY ENZMINGER, individually and on behalf of a class of all other persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PHILLIP VALDEZ, NORMA RODRIGUEZ, CHRISTOPHER ROSE, STEVEN DANFORTH, and WILLIAM DEAN, individually and in their official capacities, and CORRECTIONS CORPORATION OF AMERICA, Inc.,<br><br>Defendants. | Case No. 1:09-00010-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

The following motions are ripe and pending before the Court in this prisoner civil rights matter: (1) Defendants' Motion to Reconsider Order Denying Motion to Dismiss Second Amended Complaint (Dkt. 95); and (2) Defendants' Motion for Clarification and/or for Extension Re: Deadline for Response to Plaintiffs' Renewed Motion for Class Certification (Dkt. 101).

For the reasons set forth below, the Court will grant in part and deny in part Defendants' Motion to Reconsider. To clarify the record, Plaintiffs' claim of inadequate

**MEMORANDUM DECISION AND ORDER - 1**

medical care will be dismissed from Count II of the Second Amended Complaint. The Motion will be denied in all other respects.

The Court will grant Defendant's Motion to Clarify and/or for Extension of Time. Defendants need not file a response to Plaintiffs' Renewed Motion for Class Certification until after a period of discovery has concluded. To avoid further delay, however, the parties may begin full discovery without limitation to class certification issues. After 90 days of conducting discovery, the parties shall complete briefing on certification issues.

## MOTION TO RECONSIDER

In its October 18, 2010 Memorandum Decision and Order, the Court granted in part and denied in part Defendants' Motion to Dismiss. (Dkt. 92.) The Court concluded, in relevant part, that Defendants had not carried their burden to show that Plaintiffs Ibarra, Barrios, Kelly, Piña, or Enzminger had failed to exhaust their administrative remedies. (Dkt. 92, at 23-25.) Defendants now request that the Court reconsider this decision as to Piña, Barrios, and Enzminger. Defendants also claim that the Court failed to make explicit findings as to whether four allegedly unconstitutional policies and practices in Count II of the Second Amended Complaint fell within the scope of the exhausted claims. (Dkt. 96, p. 5.)

A district court has the authority to reconsider, rescind, or modify its prior rulings so long as it retains jurisdiction over the case. *City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 888 (9th Cir. 2001). Despite this authority, "courts should be loathe to [reconsider a prior decision] in the absence of extraordinary circumstances such

**MEMORANDUM DECISION AND ORDER - 2**

as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 817 (1988).

With the exception of correcting a clerical oversight, the Court finds no extraordinary circumstances warranting reconsideration of its previous decision.

**1. Piña and Barrios**

In turning aside Defendants' argument that none of the inmates involved in the chow hall fight had properly exhausted their administrative remedies, the Court found the following facts to be relevant to all five of the "chow hall plaintiffs":

- the transfer of Ibarra, Rocha, and Kelly from one wing of the prison to another wing with rival gang members occurred immediately before the fight;

- the fight led directly to the issuance of disciplinary offense reports (DORs) to the chow hall plaintiffs;

- the transfer of the inmates, the fight, and the issuance of DORs were all part of one continuous chain of events;

- while the prison's internal grievance procedure is available for inmates to complain about any "problem or action" related to incarceration, other prison rules expressly *prohibit* an inmate from using that procedure to challenge the "DOR process including findings and sanctions";

- thus, any distinction on these facts between a challenge to a DOR, which cannot be grieved, and a complaint related to conditions of confinement,

which can be grieved, was "exceedingly subtle."

(Dkt. 92, pp. 20-21.)

It is true, as Defendants note, that the Court also found that "to further confuse matters," three chow hall plaintiffs—Ibarra, Kelly, and Rocha—attempted to use the grievance procedure but received responses from prison staff that DORs cannot be grieved. (Dkt. 92, p. 20.) Based on all of these facts, the Court concluded that the five prisoners could have reasonably believed that the DOR process was the appropriate vehicle for raising all issues related to this incident, and that if the grievance procedure instead offered the only administrative remedy, "it was not available to these plaintiffs as a practical matter." (Dkt. 92, p. 20.) The Court went on to find that, except for Rocha, the chow hall plaintiffs had diligently attempted to alert prison officials of their failure to protect claims through the DOR process.

Defendants now argue that because Piña and Barrios did not try to submit grievances, and did not receive misleading advice from staff members, the Court should find that the grievance system was still available to them and that their failure to use it should not be excused. The Court is not persuaded by this argument. While the responses to Ibarra, Kelly, and Rocha may have "further confus[ed] matters," all of the other critical elements mentioned above applied with full force to Piña and Barrios. In short, Piña and Barrios would not have been on notice that they must route their complaints about the prison's failure to protect them from harm in an incident that led directly to DORs through the grievance procedure rather than raising those concerns as part of their DOR

**MEMORANDUM DECISION AND ORDER - 4**

hearings and appeals. The Court will not reconsider this aspect of its decision.

### 2. Enzminger

Defendants next contend that the Court erred in finding that Plaintiff Enzminger properly exhausted his failure to protect claim. Defendants assert that although Enzminger claimed at one point in the grievance process that he wanted monetary damages for a "failure to protect," he did not include that same allegation in his initial concern form or in his appeal. (Dkt. 96, pp. 4-5.)

Defendants continue to rely on a cramped interpretation of the substance of Enzminger's complaints during the administrative review process. A fair reading of his concern form, grievance, and appeal (all of which would have been available to reviewing prison officials), is that he wanted someone in a position of authority to investigate the assault, punish the offender, and compensate him for failing to protect him in the first place. These are closely related concerns, as an investigation, punishment, and compensation would presumably deter future attacks and would go some distance toward making Enzminger whole. Therefore, Defendants were on notice of Enzminger's problem, and the Court does not find their argument for reconsideration to be well taken.

### 3. The Scope of Exhaustion

For their final point, Defendants contend that the Court did not make explicit findings as to whether Plaintiffs had properly exhausted four issues listed in Count II of the Second Amended Complaint. These include Plaintiffs' allegations that, by policy and practice, Defendants (1) failed to investigate assaults, (2) did not provide adequate

**MEMORANDUM DECISION AND ORDER - 5**

medical care to the victims of assaults, (3) failed to provide sufficient living space for inmates, and (4) impermissibly issued DORs to assault victims. (Dkt. 96, p. 5.)

The Court agrees with Defendants that because it concluded in its prior Memorandum Decision that Plaintiffs did not exhaust a claim of adequate post-assault medical care, and because it dismissed Count III on that basis, that same issue must also be dismissed from Count II. The Court disagrees, however, that it did not resolve whether the other areas were included within the scope of the exhausted claims.

In addressing this matter, the Court first determined that because it had excused the failure of the chow hall plaintiffs to complete the grievance procedure, whatever level of specificity that the prison required in that procedure was not applicable to them. (Dkt. 92, p. 25.) Instead, their claims in the DOR process were sufficient for exhaustion purposes if they generally alerted the prison to the nature of the wrong for which redress was sought. (*Id.*)

The Court then analyzed whether the claims in the Second Amended Complaint were included within the scope of the issues that had been exhausted:

> The chow hall plaintiffs (minus Rocha) alerted prison officials to a failure to protect them from harm based on the mixing of rival gang members. Enzminger accused prison officials of not protecting him from a beating and then failing to follow-up with an adequate investigation. These were the core "problems," as the prisoners understood them, and they were direct outgrowths of the Defendants' alleged deliberate indifference to the their safety. The prisoners cannot reasonably have been expected to argue legal theories, nor can they be expected to know of more systemic failures at ICC that allegedly contributed to the incidents; instead, they reasonably perceived a small slice of what is now alleged to be symptomatic of a much wider problem. *See*, *e.g.*, *Strong* [*v. David*], 297 F.3d [646,] 650 ("[a]s in a notice-pleading system, the

grievant need not lay out the facts, articulate legal theories, or demand particular relief.").

(Dkt. 92, pp. 25-26.)

The Court found that "[i]ssues such as inadequate staffing, a failure to train, a failure to discipline correctional officers and other prisoners, the lack of sufficient written findings when assaults occurred, and a pervasive 'code of silence,' are not matters that an individual prisoner who has been beaten in one to two separate occasions can be expected to know without a full investigation that is beyond his capacity and authority to conduct." (*Id.* at 26.) As a result, the Court determined that these matters fell within the scope of the exhausted claims.

By highlighting these areas, the Court did not mean to suggest that policies or practices resulting in the failure to investigate assaults, the deprivation of sufficient living space, or in the issuance of DORs to the victims of assault *were* matters that individual prisoner who had been beaten in one or two separate occasions could be expected to know or had the capacity to learn through an investigation. On the contrary, those issues are likewise examples of "more systemic failures at ICC," failures that allegedly contributed to the particular incidents that Plaintiffs brought to the attention of prison officials. Accordingly, these issues will not be dismissed from Count II.

## MOTION FOR CLARIFICATION

The Court ordered Plaintiffs to file a renewed motion for class certification by a date certain, and it further ordered the parties to confer and to submit a propose schedule

for discovery on class certification issues or any other pertinent matters. (Dkt. 92, p. 27.) Plaintiffs have since filed their Renewed Motion for Class Certification, and Defendants now assert that it is unclear whether they are required to respond to that Motion within the time set by rule, or whether the Court intended for the parties to conduct discovery before the parties completed their briefing. Plaintiffs counter that discovery on class certification issues is unnecessary, and that Defendants should be required to respond to their Motion and show why they need discovery.

Rule 23(c)(1) of the Federal Rules of Civil Procedure requires a district court to resolve whether a class should be certified "at an early practicable time." The Court intends to adhere to that requirement, and though the Court indicated earlier in this case that it would give the parties some leeway in conducting discovery on certification issues, it remains skeptical of Defendants' claims that broad discovery is necessary on these issues. Nevertheless, the Court will grant Defendants' Motion and give them an opportunity to engage in discovery before filing a responsive brief, but the Court also chooses to adopt Plaintiffs' suggestion that full discovery should also commence at this time to avoid additional delay. (*See* Dkt. 100, p. 6 ("Plaintiffs' Option 2".) Accordingly, after 90 days of discovery, Plaintiffs may supplement their Renewed Motion, Defendants shall then file their response, and Plaintiffs may file a reply. The parties shall not seek Court involvement on discovery issues unless they have first conferred and attempted to resolve their differences in good faith.

As in all cases, the Court encourages the parties to consider settlement discussions.

**MEMORANDUM DECISION AND ORDER - 8**

To that end, the parties are notified that a settlement conference can be arranged through the Court's alternative dispute resolution program. If the parties wish to schedule such a conference, now or at another appropriate time, they should contact the ADR Coordinator, Susie Boring-Headlee, at 208-334-9067.

## ORDER

IT IS ORDERED:

1. Defendants' Motion for Reconsideration (Dkt. 95) is GRANTED in part and DENIED in part, as set forth above. Plaintiffs' claim of inadequate post-assault medical care is DISMISSED from Count II of the Second Amended Complaint without prejudice.

2. Defendants' Motion for Clarification and/or for Extension Re: Deadline for Response to Plaintiffs' Renewed Motion for Class Certification (Dkt. 101) is GRANTED, as follows.

3. The parties may begin discovery in this case, including both general discovery and discovery targeted to Rule 23 issues. No later than **March 22, 2011,** Plaintiffs may, at their option, supplement their Renewed Motion for Class Certification. Defendants shall file their response to the Motion on or before **April 5, 2011.** Plaintiffs may file a reply on or before **April 12, 2011.** The parties shall confer and attempt to resolve any discovery disputes before seeking court involvement.



DATED: **December 22, 2010**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 10**