UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MARLIN RIGGS,<br><br>                    Plaintiff,<br><br>     v.<br><br>CORRECTIONS CORPORATION OF AMERICA, Inc.,<br><br>                    Defendant. | Case No. 1:09-cv-00010-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

Currently before the Court in this prisoner civil rights matter is Defendant's Motion To Dismiss Complaint for Damages and Violation of Constitutional Law. (Dkt. 182.) Plaintiff has responded to the Motion (Dkt. 191), Defendant has submitted a Reply (Dkt. 198), and the matter is now ripe for the Court's decision.

The Court finds that decisional process would not be aided by oral argument, and it will resolve this matter after consideration of the parties' written briefing. D. Idaho L. Civ. R. 7.1(d). For the reasons that follow, Defendant's Motion will be granted.

**MEMORANDUM DECISION AND ORDER - 1**

## BACKGROUND

Idaho prisoner Marlin Riggs initiated this lawsuit by filing a pro se prisoner civil rights Complaint on January 12, 2009, alleging that prison employees and officials at the Idaho Correctional Center (ICC) had failed to protect him from violence and were deliberately indifferent to his serious medical needs. (Dkt. 3.) The Court first consolidated, but later severed, other cases that included similar claims. (Dkt. 8.) The Court then appointed counsel to assist Riggs. (Dkts. 11, 15.)

This case has traveled a long and circuitous path since that time. For over a year, Riggs's individual claims for damages were joined with the claims of other inmates who were seeking to certify a class action. (Dkt. 16, pp. 78-80.) Recently, at the request of the parties, Riggs's claims were severed from the potential class action (Dkt. 176), and he has since filed an Amended Complaint naming Corrections Corporations of America (CCA) as the only Defendant. (Dkt. 177, 190.)

In the pending Motion to Dismiss, CCA argues that Riggs failed to exhaust administrative remedies before filing suit as to all claims except an Eighth Amendment claim based on the failure to protect him from harm. (Dkt. 183, p. 3.) CCA further contends that Riggs's claim that CCA is vicariously liable for the acts of its employees must be dismissed because no cause of action for vicarious liability exists under 42 U.S.C. § 1983. (Dkt. 183, p. 9.)

Riggs now concedes that he is not raising separate and independent claims for relief based on CCA's alleged failure to adequately investigate assaults, discipline employees, punish prisoners who commit assaults, or refer assaults for prosecution. (Dkt. 191, at 2.) He instead characterizes these as factual allegations illustrating CCA's policies and customs that resulted in deliberate indifference to his health and safety. (*Id.*) He has also omitted any claim against CCA on a theory that it is vicariously liable for the acts of its employees. (Dkts. 189, 190, 191.)

With these clarifications, the parties appear to agree that Riggs is now pursuing two Eighth Amendment claims in his Amended Complaint: (1) that CCA has implemented policies and practices that created an unsafe environment at ICC, leading to a failure to protect Riggs from a physical assault on May 11, 2008, which caused serious injuries; and (2) that CCA has implemented policies and practices that resulted in inadequate medical care for Riggs's injuries following the assault.

With the issues now narrowed, CCA argues that the second claim – constitutionally inadequate medical care – must be dismissed for failure to exhaust administrative remedies. (Dkt. 198, p. 2.) The Court agrees.

## STANDARD OF LAW

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims

**MEMORANDUM DECISION AND ORDER - 3**

cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). This requirement is intended to give "prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id*. at 204.

Proper exhaustion is required, meaning that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

A claim that a prisoner failed to exhaust administrative remedies is an affirmative defense that should ordinarily be brought as an unenumerated motion to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2002). Defendants have the burden to plead and prove a lack of exhaustion. *Id*.

## DISCUSSION

### 1.   CCA Has Not Waived the Exhaustion Defense

Riggs initially argues that CCA has waived the exhaustion defense because it has delayed for over two years before asserting it against him. He contends that he has been prejudiced by CCA's tardiness because his pro bono counsel has invested significant time and expense in preparing the inadequate medical care claim (Dkt. 191, pp. 2-4.)

**MEMORANDUM DECISION AND ORDER - 4**

Although an affirmative defense *may* be waived or forfeited if it is not included in the defendant's answer, and the plaintiff can show that he is prejudiced by a late assertion of the defense, the "inclusion of [an affirmative] defense in an answer is sufficient to preserve the defense." *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 216 F.3d 764, 788 (9th Cir. 2000). In other words, whether a plaintiff can show prejudice is irrelevant unless the defendant has attempted to raise an affirmative defense for the first time in a motion for summary judgment *after* an answer has been submitted. *See id* at 788; *Magana v. Northern Mariana Islands*, 107 F.3d 1436, 1446 (9th Cir. 1997).

Here, CCA raised the exhaustion defense in its Answer to Riggs's most recent Amended Complaint, and it has not been waived or forfeited. (Dkt. 184, ¶ 60.) Admittedly, the procedural posture of the case is unique. Riggs filed his original Complaint well over two years ago, and CCA has twice sought the dismissal of other prisoners' claims based on a failure to exhaust without including Riggs. But Riggs has also been a party to at least four different amended complaints, including class action complaints with multiple plaintiffs and claims. (Dkts. 10, 16, 71, 177.) While CCA may have delayed pursuing the exhaustion defense against Riggs, he has also built procedural

**MEMORANDUM DECISION AND ORDER - 5**

complexity into this case through his own choices and actions. These facts do not cut decidedly in favor of either party.

Because the Court concludes that CCA has preserved the exhaustion defense, it will address the merits.[1]

### 2. ICC's Administrative Review Process

ICC follows the same three-step administrative grievance procedure that the Idaho Department of Correction uses, which requires a prisoner to submit an informal concern form describing the problem, followed by the filing of a formal grievance, and appealing any adverse decision. (Dkt. 187, Ex. C, p. 3.)

The prisoner begins this process by routing the concern form to the staff member most capable of addressing the problem. (Dkt. 187, Aff. of Chester Penn, ¶ 12.) If the issue is not resolved, the prisoner must then complete a grievance form and file the grievance within 15 days of the incident. (*Id*. at ¶ 13.) The grievance form must contain specific information regarding the nature of the complaint, including the dates, places, names of personnel involved, and how the offender has been adversely affected. (Id. at

---

[1] Although the Court does not need to reach the prejudice issue, it does not find Riggs's argument on that point to be particularly persuasive. To the extent that Riggs is raising two claims in this case – broadly characterized as the failure to protect him from harm and constitutionally inadequate medical care – these claims appear to be closely related, as the "medical claim" is based on the supposed lack of post-assault care rather than some other independent cause. Therefore, it would seem that counsel's work on the medical issue, including his consultation with an expert, would still be relevant to the damages that Riggs claims he suffered based on CCA's alleged failure to protect him from the assault.

**MEMORANDUM DECISION AND ORDER - 6**

¶ 14.) The "grievance coordinator" at the prison will route a properly completed grievance to the appropriate staff member, who must respond within 7 days. (*Id.* at ¶ 14.)

After the staff member responds, the coordinator forwards the grievance to the "reviewing authority," usually the deputy warden, who reviews the prisoner's complaint and the staff member's response and issues a decision. (*Id.* at ¶ 14.) If the prisoner is dissatisfied with the reviewing authority's decision, he may then appeal within 10 days to the "appellate authority," which is usually the facility head. (*Id.* at ¶ 15.) Once the appellate authority has issued its decision, the grievance is then routed back to the inmate, thus concluding the administrative review process. (*Id.* at ¶ 15.)

3.   **Discussion**

CCA has the burden to plead and prove that Riggs failed to exhaust his administrative remedies. *Wyatt*, 315 F.3d at 1119. In attempting to carry that burden, CCA has submitted an affidavit from Chester Penn, the grievance coordinator at ICC. According to Penn, the only grievance that Riggs completed after May 11, 2008, was based on an alleged failure to protect him from harm rather than inadequate medical care:

> I requested Officer Rose to protect me from an assault on L teir [sic]. He refused and sent me back on the teir [sic]. I also asked officers Dean, Johnson and Danforth. I requested to talk to a Captain and was refused. I was forced back on the tier, and was beat.

(Dkt. 187, Exhibit D.) Riggs filed this grievance form on May 30, 2008, and for a proposed remedy, he requested that Officer Rose be punished and that officers should be educated "to protect the inmates." (*Id.*) When his grievance was denied at the

**MEMORANDUM DECISION AND ORDER - 7**

intermediate level, Riggs appealed to the deputy warden, who denied the appeal. (*Id.*) Penn has searched ICC records and has found no other grievance where Riggs complained about the lack of adequate medical care following the assault. (Penn Aff. at ¶ 24.)

Riggs counters that to the extent he did not properly route a grievance on the medical issue up the chain of command, it was because the administrative process was simply not available to him as a practical matter. (Dkt. 191, p. 4.) He first contends that he was held in isolation after the assault and was not provided concern forms or grievance forms, despite his requests, during that time. (Dkt. 191, Affidavit of Marlin Riggs, ¶¶ 6-8.) The record shows, however, that by May 30 he was able to submit a grievance on the failure to protect issue, which the grievance coordinator accepted as timely. This establishes that he had access to the necessary forms at least by that date and he knew how to use the administrative review process. If he had been concerned about the lack of adequate medical care following the attack, that would have been an appropriate time to raise the issue properly.

Riggs nonetheless claims that he did alert prison officials of the problem beginning in early June. He has offered an inmate concern form, dated June 2, 2008, in which he complains about his ongoing medical issues stemming from the assault on May 11. (Dkt. 191-2, at 14.) The responding official construed this as a request to see a medical professional and informed Riggs that he needed to fill out a Health Services Request Form so that an appointment could be scheduled. (*Id.*) Riggs did so, and a notation on the

**MEMORANDUM DECISION AND ORDER - 8**

Health Services Request Form shows that he was "seen by Dr. 6/10/08." (*Id.*) Apparently satisfied with the response, he did not complete a grievance.

Riggs submitted a second inmate concern form touching on medical issues three months later, on September 9, 2008. On this form, he wrote that he was seen by a specialist and informed that he needed surgery, and he inquired when he was "going to get fixed." (Dkt. 191-2, at 19.) Staff responded that Riggs was "on the schedule." (*Id.*) Again, Riggs did not "grieve" any medical issue at that time.

Accordingly, while Riggs may have begun the initial steps in the administrative process with concern forms, he did not complete the process by filing formal grievances or appealing any adverse decisions. Riggs is correct that if prison officials have effectively prevented a prisoner from exhausting his complaints, then the failure to complete the system may be excused, *see Nuñez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010), but the Court is not convinced that the grievance system was unavailable to Riggs in this instance. The evidence instead shows that he was familiar with the grievance procedure, as he completed all of the necessary steps with respect to the failure to protect claim. It would not have been difficult for him to submit a grievance to ICC administrators to complain that he also did not receive timely and adequate care for his injuries stemming from the assault.

**MEMORANDUM DECISION AND ORDER - 9**

Based on the foregoing, the Court concludes that CCA has proven that Plaintiff Riggs failed to properly exhaust his remedies as to this claim.

## ORDER

IT IS ORDERED that Defendant's Motion To Dismiss Complaint for Damages and Violation of Constitutional Law (Dkt. 182) is GRANTED insofar as Plaintiff's claim that he was deprived of adequate medical care under the Eighth Amendment due to Defendant's policies and practices is DISMISSED.

DATED: **September 6, 2011**

Honorable Edward J. Lodge
U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 10**