Charles A. Brown    ISB 2129
324 Main Street
P.O. Box 1225
Lewiston, Idaho 83501-1225
Telephone: (208) 746-9947
Fax: (208) 746-5886
CharlesABrown@cableone.net

David A. Schulz (*pro hac vice*)
LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.
321 West 44th Street, Suite 510
New York, New York  10036
Telephone: (212) 850-6100
Fax: (212) 850-6299
dschulz@lskslaw.com

Steven D. Zansberg (*pro hac vice*)
LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.
1888 Sherman Street, Suite 370
Denver, Colorado  80203
Telephone: (303) 376-2400
Fax: (303) 376-2401
szansberg@lskslaw.com

Attorneys for proposed Intervenor
The Associated Press

## UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | | |
|---|---|---|
| MARLIN RIGGS, | ) | Case No. 1:09-cv-00010-S-EJL |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM BRIEF IN SUPPORT** |
| v. | ) | **OF MOTION BY THE ASSOCIATED** |
| | ) | **PRESS TO INTERVENE FOR THE** |
| CORRECTIONS CORPORATION OF | ) | **LIMITED PURPOSE TO SEEK THE** |
| AMERICA, INC., | ) | **UNSEALING OF THE SETTLEMENT** |
| | ) | **AGREEMENT (Dkt. No. 205) & FOR** |
| Defendant. | ) | **AN ORDER UNSEALING THE** |
| | ) | **SETTLEMENT AGREEMENT (Dkt.** |
| | ) | **No. 205)** |

*The Associated Press* ("AP"), by and through undersigned counsel, Charles A. Brown

and Levine Sullivan Koch & Schulz, LLP, hereby respectfully submits this Memorandum in

Support of its Motion to Intervene in this proceeding for the limited purpose of seeking the unsealing of the Settlement Agreement (Dkt. No. 205), and its Motion that the Court order the immediate unsealing of the Settlement Agreement (Dkt. No. 205).

## PRELIMINARY STATEMENT

Earlier in this litigation, the Court granted the AP's Motion to Intervene for the limited purpose of challenging the defendants' proposed Restraining Order. *See* Dkt. No. 176 (Mem. Order Apr. 27, 2011), granting AP's Mot. for Leave to Intervene for Limited Purpose of Opposing Defs.' Mot. for a Restraining Order (Dkt. No. 137). (Said Motion to Intervene Dkt. No. 137 and supportive documents are hereby incorporated herein.) Since that time, plaintiff Marlin Riggs' claims for monetary damages were severed from the potential class action on behalf of similarly situated prisoners seeking only declaratory and injunctive relief. Mem. Order (Dkt. No. 176) at 5-6 ("Plaintiffs Riggs' Amended Complaint [Dkt. 171-1] will proceed under this case number while the Amended Class Action Complaint for Declaratory and Injunctive Relief [Dkt. 143-2] will be severed and docketed under a new case number.").

As noted in AP's previous motion, this lawsuit raises profound and far-reaching issues of public interest and concern. Plaintiffs is a prison inmates suing the operators of a private, for profit, prison management company hired by the State of Idaho. The inmates alleges serious violations of his civil rights, and assert that his health and physical safety were jeopardized by defendants, in whom the State of Idaho had entrusted his care. *See* Ex. A attached hereto (Editorial, *So there was a settlement, a secret one*, Idaho State Journal, Sept. 20, 2011 (noting that the CCA facility is referred to as "gladiator school" because of allegations, in the Amended Class Action Complaint, that "guards use[] inmate-on-inmate violence as a management tool") (*available at* http://www.pocatelloshops.com/new_blogs/politics/?p=8313).

On September 6, 2011, the Court entered a Memorandum Decision and Order (Dkt. 203) dismissing portions of Riggs' Complaint for Damages and Violation of Constitutional Law. On September 12, 2011, District Court Judge David O. Carter presided over a court-ordered settlement conference that resulted in the parties reaching a resolution of the remainder of Riggs' claims. *See* Dkt. No. 204.

The next day, September 13, 2011, a Settlement Agreement executed by the parties and signed by Judge David O. Carter, was filed with this Court *under seal*, thereby depriving the public of its rights, under the common law and the First Amendment, to inspect court files. Dkt. No. 205.[1] No motion to file this document under seal appears on the Court's docket. *But see* Dist. Idaho Loc. Civ. R. 5.3(a)(1). As of this date, the Settlement Agreement remains under seal in the court's file, even though no showing apparently has been made by any party, and no specific on-the-record findings have been entered, to justify the sealing of a judicial record.

Under binding Ninth Circuit precedent, "[u]nless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (citations omitted). In such cases, "[a] party seeking to seal a judicial record . . . bears the burden of overcoming th[e] strong presumption by meeting the 'compelling reasons' standard." *Id.* (citation omitted). Here, no such showing has been made, and the Settlement Agreement must therefore be unsealed.

---

[1] The settlement agreement in the companion case, *Kelly, et al. v. CCA, et al.*, No. 1:11-CV-00185-EJL, has been publicly filed (Dkt. 25) and that case has been dismissed. The Riggs settlement, which is the focus of this motion, remains under seal.

## ARGUMENT

**I.    THE ASSOCIATED PRESS SHOULD BE PERMITTED TO INTERVENE FOR THE LIMITED PURPOSES OF SEEKING UNSEALING OF THE SETTLEMENT AGREEMENT**

The AP is a not-for-profit mutual news cooperative.  The members of AP are more than 1,400 newspapers and more than 5,000 television and radio stations throughout the United States.  The AP also serves thousands of subscribing newspapers, news networks, and other publishers and distributors of news worldwide.  Founded in 1846, the AP is now the largest newsgathering organization in the world.

Courts routinely permit the news media to intervene and appear in cases in which they are not parties for the purpose of challenging requests to seal judicial records.  *See, e.g.*, *Kamakana*, 447 F.3d at 1176; *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1101 (9th Cir. 1999) (vacating trial court's order denying newspaper's motion to intervene).  Press participation in such proceedings is vital because the press serves as "surrogates for the public," by protecting the public's right to understand the workings of the judicial system.  *Richmond Newspapers v. Virginia*, 448 U.S. 555, 573 (1980); *see also California ex rel. Lockyer v. Safeway*, 355 F. Supp. 2d 1111, 1124 (C.D. Cal. 2005) (unsealing documents at the request of intervening newspaper and noting that "the press has historically served as a monitor of both the State and the courts, and it plays a vital role in informing the citizenry on the actions of its government institutions"); *accord EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1045-46 (D.C. Cir. 1998) (allowing intervention "for the limited purpose of seeking access to materials that have been shielded from public view either by seal or by a protective order"); *In re Guantanamo Bay Detainee Litig.*, 630 F. Supp. 2d 1, 5 (D.D.C. 2009) (allowing press applicants to intervene to oppose sealing motion); *United States v. Moussaoui*, 65 Fed. App'x 881, 884, 891

(4th Cir. 2003) (granting news coalition's motion to intervene for limited purpose of obtaining access to certain records). Such intervention is constitutionally required. *See Globe Newspaper Co. v. Super. Ct. for Norfolk County*, 457 U.S. 596, 609 n.25 (1982) (representatives of the press must be given an opportunity to be heard on restrictions to constitutional right of access); *Phoenix Newspapers, Inc. v. U.S. Dist. Ct. for the Dist. of Arizona*, 156 F.3d 940, 949 (9th Cir. 1998) (court must afford the press an opportunity to object to closure of court proceedings prior to an order closing such proceedings to the public).

Accordingly, the AP has standing to challenge the sealing of the Settlement Agreement, and its Motion for Leave to Intervene to allow AP to vindicate both the press' and the public's right of access should be granted.[2]

## II. THE PARTIES HAVE NOT MADE THE REQUISITE SHOWINGS TO JUSTIFY SEALING OF A JUDICIAL RECORD AND THE SETTLEMENT AGREEMENT (Dkt. No. 205) SHOULD BE UNSEALED.

### A. No Motion to Seal the Settlement Agreement was Filed or Ruled Upon by the Court

As a threshold matter, the parties failed to follow proper proceeding in seeking to seal the Settlement Agreement. Local Rule 5.3(a)(1) mandates that any "[c]ounsel seeking to file a

---

[2] The fact that the parties have filed a Stipulated Dismissal is of no moment to this motion. It also is well-settled that an interested third party may bring its motion to unseal court records after the underlying proceedings have been terminated. *Wilson v. Am. Motors Corp.*, 759 F.2d 1568, 1569 (11th Cir. 1985) (third party intervened after judicially approved settlement in order to challenge sealing), *FDIC v. Ernst & Ernst*, 677 F.2d 230, 231-32 (2nd Cir. 1982) (third party intervened to challenge stipulated confidentiality order two years after settlement); *Mokhiber v. Davis*, 537 A.2d 1100, 1104-06 (D.C. Cir. 1988) (reporter permitted to intervene four years after a judicially-approved consent decree in order to challenge a protective order); *Van Etten v. Bridgestone/Firestone, Inc.*, 117 F. Supp. 2d 1375, 1379 (S.D. Ga. 2000) (media intervened and compelled unsealing of records a year after settlement of a products liability case); *see also United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990) ("As long as a protective order remains in effect, the court that entered the order retains the power to modify it, *even if the underlying suit has been dismissed.*" (emphasis added)) .

document under seal shall file a motion to seal, along with supporting memorandum and proposed order, . . . with the Clerk of the Court." This motion must contain "MOTION TO SEAL" in bold letters in the caption of the pleading. *Id.*, *see also Tetzner v. Kootenai Cnty.,* No. CV07-35-N-EJL, 2009 WL 3089225, at *4 (D. Idaho Sept. 22, 2009) (filing a motion to seal court records under Local Rule 5.3 "is the procedural practice for sealed documents," and once such properly filed motion is granted, the documents remain under seal "unless or until a motion to unseal the documents is made and granted by the Court"); *Cantu v. Conway,* No. CV-05-353-S-LMB, 2007 WL 2684831 (D. Idaho Sept. 7, 2007) (denying respondent's motion to strike motions that were filed under seal but were not in compliance with Local Rule 5.3).

Here, the docket reflects no such motion to seal the Settlement Agreement as Local Rule 5.3(a)(1) requires, and no court order alleviating the parties of the obligation to file a noticed motion to request sealing. *See* Dist. Idaho Loc. Civ. R. 5.3(a)(2). Accordingly, there is no proper basis under the common law to keep the settlement under seal.

### B.   Both the Common Law and the First Amendment Extend a Qualified Right of Public Access to Judicial Records

#### 1.   Under the Common Law, a Party Seeking to Seal Judicial Records Must Show "Compelling Reasons."

It is well settled that the public has a "common law right 'to inspect . . . judicial records and documents.'" *Pintos v. Pac. Creditors Ass'n,* 605 F.3d 665, 678 (9th Cir. 2010) (quoting *Kamakana,* 447 F.3d at 1178), *cert. denied sub. nom, Experian Info. Solutions, Inc. v. Pintos,* 131 S. Ct. 900 (2011). The U.S. Court of Appeals for the Ninth Circuit has recognized "a strong presumption in favor of access" to judicial records in civil cases. *Foltz v. State Farm Mut. Auto Ins. Co.,* 331 F.3d 1122, 1135 (9th Cir. 2003). Except in a narrow categories of records not at

issue here[3], any party seeking to seal a document filed with the court—and particularly one that terminates the entire civil action with *express judicial approval*—must show that "compelling reasons supported by specific factual findings . . . outweigh the general history of access and the public policies favoring disclosure." *Kamakana*, 447 F.3d at 1178 (citations and internal quotation marks omitted); *Id.* ("A party seeking to seal a judicial record . . . bears the burden of . . . meeting the 'compelling reasons' standard."). To defeat the common law access right, a party must demonstrate that some unacceptable injury will result if the records are public, and the reasons proffered cannot be based "on hypothesis or conjecture." *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995). Courts have uniformly emphasized that sealing should be the rare exception, not the common practice. *See, e.g., Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 182 (4th Cir.1988) (sealing is reserved only for "unusual" cases); *see also* Joseph F. Anderson, Jr., *Hidden from the Public by Order of the Court: The Case Against Government-Enforced Secrecy*, 55 S.C. L. Rev. 711, 712 (2004) (discussing the "discernable and troubling trend in civil litigation" of sealing settlement terms by court order).

Under the "compelling reason" standard, a district court must weigh "relevant factors," base its decision "on a compelling reason," and "articulate the factual basis for its ruling, without

---

[3] The only two categories of documents the Ninth Circuit has recognized as "not subject to the right of public access" are "grand jury transcripts and warrant materials in the midst of pre-indictment investigation." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (citing *Times Mirror Co. v. United States*, 873 F.2d 1210, 1219 (9th Cir. 1989)).

relying on hypothesis or conjecture." *Hagestad*, 49 F.3d at 1434.[4]  An order sealing a court record that fails to articulate its reasoning *must* be vacated and remanded because "meaningful appellate review is impossible" when the appellate panel has no way of knowing "whether relevant factors were considered and given appropriate weight." *Hagestad*, 49 F.3d at 1434-35 (internal quotation marks omitted).

Lastly, any effort to seal a judicial record in the court file must establish the "compelling reasons" for sealing on a specific showing that *particular* information – not an entire document – will cause actual and substantial injury if it is disclosed. *See, e.g.*, *In re Ferrero Litig.*, No. 11-CV-205 H(CAB), 2011 WL 3360443, at *2 (S.D. Cal. Aug. 3, 2011) (denying motion to seal court records because plaintiff's "motion to seal does not . . . . explain why *any particular statements or portions of the exhibits* . . . may warrant sealing. Even if good cause existed to seal a *portion* of the exhibit, sealing the entire exhibit may not be warranted. Should either party in the future request the sealing of any documents, they must designate specific portions based on the appropriate showing." (emphasis added)).

None of the required showings were made by the parties.  No order has been entered weighing the relevant factors and making the requisite "specific factual findings," and there is no judicial finding of "compelling reasons" that would allow for meaningful appellate review.  On this basis alone, the settlement agreement must be unsealed. *See Hagestad*, 49 F.3d at 1435

---

[4] "'Relevant factors' include the 'public interest in understanding the judicial process and whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes or infringement upon trade secrets.'" *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 659 n.6 (9th Cir. 2010) (citing *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir.1995)); *see also Kamakana*, 447 F.3d at 1179 ("In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets.").

(vacating trial court's order sealing judicial record because court did not make adequate findings justifying sealing); *EEOC v. Erection Co.*, 900 F.2d 168, 169 (9th Cir. 1990).

Moreover, on the facts of this case, no proper basis for sealing exists. As several courts have held that a settlement agreement *in which a federal judge participated,* which terminates a civil case, and is on file with the court is necessarily subject to a strong presumption of public access. *See, e.g., Jessup v. Luther,* 277 F.3d 926, 930 (7th Cir. 2002). The Seventh Circuit stated as follows:

> Whatever the rationale for the judge's participation in the making of the settlement in this case, the fact and consequences of his participation are public acts. He is not just a kibitzer. But even if he had been, judicial kibitzing is official behavior. The public has an interest in knowing what terms of settlement a federal judge would approve and perhaps therefore nudge the parties to agree to.
>
> . . .
>
> [T]he fact remains that the district court's files now contain a document that reflects input by a federal judge, and so the document is presumptively a public document.
>
> . . .
>
> Documents in judicial files are presumptively open to the public and neither the magistrate judge nor any of the parties has given any reason to think the presumption might be rebutted in this case.

*Jessup,* 277 F.3d at 929-30.

All of the facts and law set forth in *Jessup* are fully applicable here. The Court participated in the settlement conference on September 12, 2011. The Court *signed* the Settlement Agreement when it was filed on September 13, 2011. *See* Dkt. No. 205. The Settlement Agreement remains in the Court's files. It is "a document that reflects input by a federal judge and so the document is presumptively a public document." *Jessup,* 277 F.3d at 929-30.

The U.S. District Court for the Eastern District of Virginia recently explained why generalized interests in encouraging negotiated settlements of civil disputes do *not* outweigh the public's presumptive right of access in cases such as this one:

> One might argue that sealing settlement agreements furthers the public policy favoring out-of-court settlement. . . . This argument proves too much; it result[s] in the exception swallowing the rule. While the interest in fostering settlement is undeniably woven into the judicial fabric, this generalized interest cannot heavily outweigh the public's interest in access to the judicial process. *See Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 344 (3d Cir. 1986) (interest in confidential settlements does not outweigh the interest in public access where the settlements are subject to judicial approval); *Poulin v. Gen. Dynamics Shared Res., Inc.*, 2010 U.S. Dist. LEXIS 29478, 2010 WL 1257751 (W.D. Va. Mar. 26, 2010) (denying request to seal settlement agreement where parties cited only generalized interest in private settlements). . . .
>
> Settlement agreements, of course, do not generally become part of the public record because they do not ordinarily require judicial consideration or approval. When parties settle a case out of court, they are free to craft their own terms that suit their particular needs, including strict confidentiality clauses. [Here, however, there has been judicial review and approval of the settlement]. No good cause or persuasive reason has been adduced to warrant concealing judicial review of the settlement from public scrutiny.

*K.S. v. Ambassador Programs Inc.*, No. 1:10CV439, 2010 WL 3565481, at *3-4 (E.D. Va. Sept. 3, 2010) (citations omitted).

Other courts have recognized that the public's interest in accessing the settlement agreement, including the *settlement amount*, often outweighs any interest in confidentiality. *See Perry v. Nat'l City Bank*, No. 05-cv-891-DRH, 2008 WL 427771, at *1, (S.D. Ill. Feb. 14, 2008) ("Given the nature of the FLSA suit . . . the Court finds it important for the settlement to be made accessible to the public . . ."); *Bartelloni v. DeCastro*, No. 05-80910-CIV-COHN, 2007 WL 2155646, at *2 (S.D. Fla. July 26, 2007) (confidentiality provision in settlement held insufficient

basis to seal settlement agreement); *West v. First Franklin Fin. Corp.*, No. 06-2064-KHV, 2007
U.S. Dist. LEXIS 30963, at *3 (D. Kan. Apr. 25, 2007) (rejecting the parties' argument that "the
confidentiality of the awards is a material element of the settlement agreement"); *see also Hill v.
Kenworth Truck Co.*, No. 2:07-0223, 2008 WL 4058426, at *4 (W. Va. Aug. 26, 2008)
(defendant in wrongful death case in which minor was a beneficiary moved to seal settlement
amount; court concluded that "the amount of the settlement is not a tangential matter . . . but
rather goes to the heart of the petition inasmuch as the court is being asked to approve the
amount of the settlement and the distribution thereof. Without access to this information, the
public has no means of judging the product of the court in this case").

All of these factors apply *a fortiori* in this case, whose merits themselves are a matter of
intense public interest.  In this lawsuit prison inmate has pleaded serious and far-reaching
allegations of gross mismanagement and inhumane treatment by his taxpayer-funded, for-profit
jailors.  The public's significant interest in the terms of a settlement agreement terminating this
action far outweigh any purported interests the parties may have in maintaining the secrecy of
those settlement terms.

In short, no showing has been made, by any party, that any *portion* of the Settlement
Agreement warrants sealing from public view under the "compelling interests" standard of the
common law.  Accordingly, the Settlement Agreement should be unsealed forthwith.

### 2.    The First Amendment Provides a Qualified Right of Access to Judicial Records in Civil Cases.

All apart from the common law right of access recognized in directly applicable Ninth
Circuit precedent, the First Amendment independently extends a constitutional right of access to
court records in civil proceedings.  The same factors that led to a recognition of a First
Amendment right of access to criminal proceedings and court records apply equally to civil

cases. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 n.17 (1980) ("historically both civil and criminal cases have been presumptively open"); *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1177-78 (6th Cir. 1983) (holding that both the historical and "[t]he policy considerations discussed in *Richmond Newspapers* apply to civil as well as criminal cases"). While the Ninth Circuit has not yet addressed this issue,[5] it has recognized that there is "no support" for drawing a distinction between access to criminal proceeding and records – to which the Ninth Circuit has found a constitutional right of access – and civil proceedings and records. *EEOC v. Erection Co.,* 900 F.2d 168, 169 (9th Cir. 1990).

The U.S. Supreme Court first articulated the public's independent First Amendment right of access to certain government proceedings and records in *Richmond Newspapers*, 448 U.S. 555 (1980). Among the central rationales behind the recognition of the constitutional access right in *Richmond Newspapers* is the need to ensure the transparency and accountability of the judicial process. *See id.* at 578. Clarifying the scope and basis of the constitutional access right just two years later, the Court emphasized that the First Amendment protects the free discussion of government affairs in order to allow democratic oversight of our institutions of government – to ensure that citizens "can effectively participate in and contribute to" democratic self-governance. *Globe Newspaper Co. v. Super. Ct.*, 457 U.S. 596, 604 (1982). That the health of our democracy relies upon an informed citizenry, capable of reasoned deliberation about the organs and instruments of their governance, is the central premise that undergirds the constitutional access right.

---

[5] Although many courts have reached just this conclusion, the Ninth Circuit has yet to decide the issue. *See San Jose Mercury News v. U.S. Dist. Court*, 187 F.3d 1096, 1101-02 (9th Cir. 1999) ("[W]e leave for another day the question of whether the First Amendment … bestows on the public a pre-judgment right of access to civil court records").

The constitutional access right also promotes the effective functioning of the courts. The First Amendment access right extends to civil lawsuits, the Second Circuit has explained, "because public access to civil trials 'enhances the quality and safeguards the integrity of the factfinding process,' 'fosters an appearance of fairness,' and heightens 'public respect for the judicial process,' while permitting 'the public to participate in and serve as a check upon the judicial process – an essential component in our structure of self government.'" *Westmoreland v. Columbia Broad. Sys. Inc.*, 752 F.2d 16, 23 (2d Cir. 1984) (citations omitted) (quoting *Globe Newspaper Co.*, 457 U.S. at 606)).

In order to determine what official proceedings and records are subject to the constitutional access right, the Supreme Court developed a two-pronged test that evaluates both historic practices and policy objectives. *See Globe Newspaper Co.*, 457 U.S. at 605-07; *Press-Enter. Co. v. Super. Ct. of California for Riverside County*, 478 U.S. 1, 8-9 (1986). Applying the "experience and logic" analysis, the constitutional right of access has been held to apply to virtually all judicial proceedings, including both civil and criminal trials, the jury selection process, pretrial hearings, and post-trial motions. This constitutional access right extends not only to judicial proceedings, but to most judicial records. *See Publicker Indus. v. Cohen*, 733 F.2d 1059 (3d Cir. 1984) (constitutional right of access extends to filed motions in civil proceeding); *Republic of the Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 659 (3d Cir. 1991) ("[T]he First Amendment, independent of the common law, protects the public's right of access to the records of civil proceedings."); *Lugosch v. Pyramid Co. of Onandaga*, 435 F.3d 110, 124 (2d Cir. 2006) (recognizing constitutional right of access to "documents submitted to the court in connection with a summary judgment motion"). This right applies to all categories of court records where "experience and logic" demonstrate that a public right to inspect records

should apply. *See, e.g., Jessup,* 277 F.3d at 927-28 (holding that First Amendment right of access applies to settlement agreement filed with the court).

The standards governing the First Amendment right of access are well-settled. The qualified constitutional access right imposes a heavy burden on those who seek to limit public access to justify the restriction. *See Globe Newspaper Co.,* 457 U.S. at 606 ("the State's justification in denying access must be a weighty one"). As the Supreme Court explained in *Globe Newspaper Co.,* the standard to be met is a strict one: "Where . . . the State attempts to deny the right of access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest." 457 U.S. at 606-607.

To ensure this constitutional standard is met, the U.S. Supreme Court has imposed strict procedural requirements. Court records cannot constitutionally be sealed from public view unless "specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enter.,* 478 U.S. at 13-14 (citations and internal quotation marks omitted); *Oregonian Publ'g Co. v. U.S. Dist. Ct. for Dist. of Oregon,* 920 F.2d 1462, 1466 (9th Cir. 1990) ("[T]he court must not base its [closure] decision on conclusory assertions alone, but must make specific factual findings."); *see also In re Time, Inc.,* 182 F.3d 270, 271 (4th Cir. 1999) (holding that before a court may seal pleadings, it must enter findings explaining "why it rejected alternatives to sealing.").

And because the First Amendment right of access is an affirmative right that the press and public have standing to enforce, the public must be given notice and opportunity to be heard before access is limited. *Globe Newspaper Co.,* 457 U.S. at 609 n.25 ("representatives of the press and general public 'must be given an opportunity to be heard on the question of their

exclusion.'") (quoting *Gannett Co. Inc. v. DePasquale*, 443 U.S. 368, 401 (1979)); *Phoenix Newspapers, Inc.*, 156 F.3d at 949 (court must afford the press an opportunity to appear and be heard in opposition to proposed closure of court proceedings before court may enter an order closing such proceedings to the public).

Here, once again, none of the requisite showings required to overcome the constitutional access right have been made. No judicial findings have been entered demonstrating that the parties have satisfied the stricter, more rigorous standards imposed by the First Amendment. Accordingly, the Agreement should be unsealed forthwith.

## CONCLUSION

For the reasons stated above, the AP respectfully requests that its Motion to Intervene be granted, and that the Court order the immediate unsealing of the Settlement Agreement (Dkt. No. 205).

DATED: October 4, 2011.

**CHARLES A. BROWN**
Charles A. Brown (ISB 2129)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 4th day of October, 2011, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

- James D. Huegli, *Attorney for Plaintiffs*
  jameshuegli@yahoo.com
- Daniel Patrick Struck, *Attorney for Defendant CCA, Inc.*
  dstruck@swlfirm.com
- James R. Stoll, *Attorney for Defendant CCA, Inc.*
  jrs@naylorhales.com
- Kirtlan G Naylor, *Attorney for Defendant CCA, Inc.*
  kirt@naylorhales.com
- Tara B Zoellner, *Attorney for Defendant and CCA, Inc.*
  tzoellner@swlfirm.com
- Timothy J Bojanowski, *Attorney for Defendant and CCA, Inc.*
  tbojanowski@swlfirm.com
- David A. Schulz
  dschulz@lskslaw.com
- Steven D. Zansberg
  szansberg@lskslaw.com

**CHARLES A. BROWN**
Charles A. Brown (ISB 2129)



- Home

[ Search ]

- Uncategorized

Comments
Posts



# So there was a settlement, a secret one

Recommend    Be the first of your friends to recommend this.

Idaho State Journal Editorial

Corrections Corporation of America runs a prison under contract with the state of Idaho, and it's not a place you want to be. In fact, inmate Marlin Riggs sued CCA, seeking $55 million in damages for injuries he received from attacks by other prisoners.

Riggs' attorney, James Huegli, has reached a settlement with the prison operators but we won't know the details. The legal deal was placed under seal in Boise's U.S. District Court after both sides reached a confidentiality agreement.

So, does that mean the state is unable to learn details of how its client dealt with the Riggs lawsuit? Wouldn't the settlement be of interest as the state considers whether to extend its contract with CCA?

Or wouldn't the other inmates, who have filed a group lawsuit of their own, like to learn what the Riggs settlement entailed?

There's plenty of gore described in the lawsuit brought by 48-year-old Riggs in 2009, much of it already known. To sum it up, Riggs says CCA's guards failed to protect him from violence at the hands of other inmates even though he told the officers he was about to be attacked.

He also contended that CCA employees failed to adequately treat his injuries, which included a broken nose and smashing of his face.

CCA denied all the allegations in the lawsuit, saying the prison near Boise is run in accordance with state and federal standards.

But other inmates claimed the prison was so violent it's called "gladiator school," and guards used inmate-on-inmate violence as a management tool. Riggs claims in his lawsuit that he was "one of the scores of prisoners brutally assaulted as a result of defendants' deliberate indifference to prisoner safety."

Corrections Corporation of America describes itself as the nation's largest owner and operator of privatized correctional and detention facilities and one of the largest prison operators in the United States, behind only the federal government and three states.

CCA currently owns and operates more than 60 facilities including 44 company-owned facilities, with a design capacity of more than 85,000 beds in 19 states.

As a private business, CCA aims to make a profit on its operations. Whether it remains in operation in Idaho is problematic, though the state says the prison has cleaned up its act since the Riggs lawsuit was filed.

Too bad we won't know the details of that settlement and how things are going at the erstwhile "gladiator school" we're paying for.

➕ **Recommend** 🔁 📘 🖂 ...

3 comments - What do you think? Posted by ifennell - September 19, 2011 at 11:52 pm

Categories: Uncategorized  Tags:

### 3 Responses to "So there was a settlement, a secret one"

1. *jack inhoff* says:
   September 20, 2011 at 4:22 am

   Idaho: the corporate prison state. The free enterprise job engine for Idahoans.



EXHIBIT

A